City of Philadelphia, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Nellie Johnson, Respondents.

370

Argued April 7, 1980, before Judges BLATT, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Gayle R. Smith,* Assistant City Solicitor, with her *Sheldon L. Albert,* City Solicitor, *James M. Penny,*

*Jr.,* Deputy City Solicitor, and *Ralph J. Teti,* for petitioner.

*Robert P. DiMenicus,* for respondent, Commonwealth of Pennsylvania.

*Michael J. Pepe, Jr.,* for respondent, Nellie Johnson.

OPINION BY JUDGE WILLIAMS, JR., October 27, 1980:

The City of Philadelphia (City) has filed a petition for review urging us to reverse an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's award of compensation to respondent Nellie Johnson (claimant).

On December 1, 1976, the claimant was a member of the Wissinoming First Aid Corps, a volunteer ambulance organization. On that date she sustained injuries as a result of tripping on an unsecured rug while wheeling a patient into the emergency entrance of Frankford Hospital in Philadelphia. It is undisputed in this case that the claimant's injuries occurred in the course of performing gratuitous services with the ambulance corps and that as a result of the injuries she was unable to return to her duties with the ambulance corps until February 6, 1977.

For the approximately nine-week period of the claimant's injury, the referee awarded her compensation at the rate of $124.67 per week, together with a reimbursement of medical and hospital expenses. When the City's appeal to the Board was dismissed, a further appeal to this Court followed.

Of course, our scope of review in a workmen's compensation case is restricted to a determination of whether constitutional rights have been violated, an error of law committed, or whether any necessary finding of fact was unsupported by substantial evidence. *E.g., North American Coal Corp. v. Work-*

*men's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 482, 395 A.2d 1030 (1979); *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

The City's pivotal contention is that the Board committed an error of law in concluding that the claimant was a statutory employee of the City for purposes of coverage under The Pennsylvania Workmen's Compensation Act.[1] In denying that the claimant was a statutory employee, the City emphasizes that it has not authorized any of the activities of the Wissinoming First Aid Corps, has not exercised any control over the organization or extended any recognition to it.

The central legal issue of this case, as posed by the City's contention, is generated by the "new" Section 601 of The Workmen's Compensation Act.[2] In pertinent part, that Section provides:

> In addition to those persons included within the definition of the word 'employe' as defined in section 104 of this act, there shall be included *all members of volunteer ambulance corps . . .* of the various *cities,* boroughs, incorporated towns, and townships, *who shall be and are hereby declared to be 'employes' of such cities,* boroughs, incorporated towns, townships, for all the purposes of this act, and shall be entitled to receive compensation in case of injuries received *while actually engaged as ambulance corpsmen . . .* or while answering any emergency call for any purpose . . . or while performing any other duties of such

---

[1] Act of June 2, 1915, P.L. 736, §§101 *et seq., as amended,* 77 P.S. §§1 *et seq.*

[2] Added by Act of December 5, 1974, P.L. 782, §15, 77 P.S. §1031. Although not applicable to this case, this Act was amended by the Act of November 26, 1978, P.L. 1328, §1, 77 P.S. 1031 (1979 Supp.).

ambulance corps . . . authorized by such cities, boroughs, incorporated towns and townships. . . . (Emphasis added.)

In *Workmen's Compensation Appeal Board v. Mahoning Supervisors,* 24 Pa. Commonwealth Ct. 207, 354 A.2d 604 (1976), we had occasion to construe the "new" Section 601 as it applies to volunteer firemen. In that case this Court held that a volunteer fireman could qualify for workmen's compensation only if at the time of his injury he was: (1) actually engaged as a fireman or (2) performing other duties authorized by the township involved. However, in the instant case the City's reliance on *Mahoning* is misplaced. Where, as here, the claimant was "actually engaged" as an ambulance corpsman, Section 601 does not require precedent authorization from the municipality. It is only for the performance of "any other duties" beyond those specifically enumerated in Section 601 that authorization is a condition precedent of compensability. Therefore, the fact that the City had not authorized the activity in which the instant claimant was injured does not preclude compensation.

Section 601 provides that "[A]ll members of volunteer ambulance corps . . . shall be and are hereby declared to be employes of such cities. . . ." The crucial words are *"shall"* and *"hereby."* The Section does not make ambulance corpsmen statutory employees at some indefinite future time. Nor is the status of employee made dependent upon a contingent event such as municipal acknowledgement, recognition or authorization of the volunteer organization's existence. Ambulance corpsmen are given the status of employees by Section 601 itself. In that sense the Section is self-executing.

The petitioner additionally argues that Section 601 does not apply to cities of the first class, by vir-

tue of the First Class City Home Rule Act.[3] The petitioner bases that argument on the case of *Ebald v. Philadelphia,* 7 Pa. D. & C.2d 179, *aff'd per curiam,* 387 Pa. 407, 128 A.2d 352 (1957). In the *Ebald* case a Philadelphia policeman commenced an action in assumpsit against the City of Philadelphia to recover compensation for a disabling heart disease, allegedly caused in the course of his duties as a city policeman. The action was based on a state statute which provided for compensation of policemen and firemen throughout the state for diseases of the heart and lungs due to exertion or exposure arising out of their employment. The lower court held that the disabled city policeman was not within the coverage of the state statute, because the Philadelphia Civil Service Commission had enacted a regulation, Regulation 32, to provide for disability compensation for city policemen. In so holding, the lower court in *Ebald* concluded that the city disability compensation plan was comprehensive and superseded any contrary statewide legislation.

The legal principle for which the *Ebald* case stands is that a city of the first class, possessing home rule powers, may by regulation or ordinance establish a disability compensation plan for its employees, a plan that is independent of contrary provisions in a state statute. *See City of Philadelphia v. Hays,* 13 Pa. Commonwealth Ct. 621, 320 A.2d 406 (1974).

Granting that the City of Philadelphia has the legal power to establish its own disability compensation plan for volunteer ambulance workers, as *Ebald* suggests, the point of the matter is that the City has taken no such action by ordinance or regulation. So far as the instant case is concerned, there is no home-rule enactment to supersede or supplant the state provision for volunteer ambulance corpsmen. One of the

---

[3] Act of April 21, 1949, P.L. 665, §17, *as amended,* 53 P.S. §13131.

salient features of the *Ebald* case was that there was coverage in place of the state provisions. Such is not so here: if volunteer ambulance workers in Philadelphia are not covered by the Workmen's Compensation Act, as the City here argues, and are not covered by any City disability plan, then they would be deprived of any governmental disability protection. In sum, the decision in the *Ebald* case does not preclude the claimant at bar from the coverage provided by Section 601 of the Act.

Moreover, we reject the City's contention that its maintenance of a professional rescue service operates to nullify the application of 601 to volunteer ambulance corpsmen in Philadelphia. For us to embrace that contention would amount to engrafting a limitation on the Section that the legislature did not impose.

In this appeal the petitioner, City of Philadelphia, has emphasized the practical problems that arise from applying Section 601 to a municipality such as Philadelphia. It is pointed out that the City exercises no significant control over the volunteer ambulance corps and companies, and may even be unaware of their existence in some cases. These considerations are arguments for amending the state statute, or for the City itself to take legislative action as the *Ebald* case suggests that it can.

However, this Court cannot be the instrument to change the words of the Workmen's Compensation Act as it is now written. We find no degree of ambiguity in Section 601 which would justify our disregarding its letter. If the words of a statute are clear and free of ambiguity we are not to disregard the letter thereof under the pretext of pursuing an unstated legislative intent. *E.g., City of Pittsburgh v. Royston Service, Inc.,* 37 Pa. Commonwealth Ct. 394, 390 A.2d 896 (1978).

The legislature of this state has clearly declared its policy that *all* members of volunteer ambulance corps of the various cities shall be deemed employees of such cities for purposes of workmen's compensation coverage. No degree of straining can validly cloud the thrust of that provision.

For the reasons set forth in this opinion, we are compelled to affirm the order of the Board in this case.

### ORDER

AND Now, the 27th day of October, 1980, the order of the Workmen's Compensation Appeal Board in the above matter, at No. A-75889, is affirmed.

The City of Philadelphia is directed to pay to claimant Nellie Johnson compensation at the rate of $124.67 per week, for the period from December 1, 1976, to February 6, 1977, with interest at the statutory rate.

The City of Philadelphia is also directed to reimburse the claimant for the medical and hospital expenses set forth in the referee's award.

The claimant shall pay to Michael J. Pepe, Jr., Esquire, a counsel fee equal to Thirty-Three and One Third Per Cent of the compensation awarded.