Robert **GUFFEY**, Dorothy **Smith** and Thomas **Smith**, Jacqueline **Savage** and James **Savage**

v.

Michael J. **LOGAN** and William R. **Meeker**, Inc.

v.

**LEVITTOWN–FAIRLESS HILLS RESCUE SQUAD** and Robert **Guffey**.

Civ. A. No. 80–4759.

United States District Court, E.D. Pennsylvania.

Jan. 17, 1983.

Upon Reconsideration Feb. 9, 1983.

---

Brian D. Nealon, Morrisville, Pa., for Dorothy Smith & Thomas Smith.

Michael T. Sellers, Langhorne, Pa., for Robert Guffey.

Jeffrey M. Stopford, Philadelphia, Pa., for James Savage.

David Durben, Durben & Hains, Morrisville, Pa., for Logan & Meeker.

Harry A. Short, Jr., Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for Levittown.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This diversity suit arises out of an automobile accident between an ambulance and another vehicle. Although one would expect that legal issues arising out of such an occurrence would be relatively simple, novel and thorny issues concerning third party practice and the Pennsylvania Workmen's Compensation Act ("PWCA") have arisen.

Plaintiffs in this case are Robert Guffey, Dorothy Smith, her husband Thomas Smith, Jacqueline Savage and her husband James Savage. Guffey, Mrs. Smith and Mrs. Savage are all volunteer members of the Levittown-Fairless Hills Rescue Squad ("Rescue Squad"). In December of 1978, Guffey was driving an ambulance in response to an emergency call by the police. With him were Mrs. Smith and Mrs. Savage both of whom were emergency medical technicians. While en route, they collided with a vehicle operated by one of the defendants, Michael J. Logan, and owned by the other defendant, William R. Meeker, Inc. The three plaintiffs in the ambulance were injured, they assert, as a result of the defendants' negligence. Mr. Smith and Mr. Savage join as plaintiffs alleging the loss of the society, service, companionship and consortium of their spouses.

Defendants then filed a third party complaint against Guffey and the Rescue Squad. In it they contend that if they are found liable to the plaintiffs, then Guffey and the Rescue Squad are liable over to them for either contribution or indemnity. The third party defendants have now moved for summary judgment asserting that they are both immune from liability under the PWCA, and, in addition, that the Rescue Squad cannot be vicariously liable for an immune employee.

Rule 56 of the Federal Rules of Civil Procedure provides that a district court shall enter summary judgment where "the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact...." Fed.R.Civ.P. 56(c). The court must recognize, though, that it is a drastic remedy, resolve all doubts as to the existence of genuine fact against the moving party, and view all inferences from the facts in the light most favorable to the parties opposing the motion. *Continental Insurance Co. v. Bodie,* 682 F.2d 436 (3d Cir.1982). The issues presented in this motion and in the defendants' responses are legal issues involving statutory interpretation and application of common law principles to the material facts of this case all of which are undisputed.[1] Thus, summary judgment is an appropriate procedure for resolving these issues.

### Motion for Summary Judgment of Robert Guffey

Guffey seeks summary judgment based on the argument that he is immune under the PWCA which provides that:

> [i]f disability ... is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability ... for any act or omission occurring while such person was in the same employ as the person disabled....

Pa.Stat.Ann. tit. 77, § 72 (Purdon Supp. 1982). The immunity supplied by this provision has been invoked successfully by several employees in suits by co-employees and their spouses. *See Apple v. Reichert,* 443 Pa. 289, 278 A.2d 482 (1971) (nonsuit affirmed); *DeLong v. Miller,* 285 Pa.Super.Ct. 120, 426 A.2d 1171 (1981) (summary judgment affirmed); *Flanders v. Hoy,* 230 Pa. Super.Ct. 322, 326 A.2d 492 (1974) (dismissal of complaint affirmed).[2]

■ The parties agree, and I concur, that Guffey, Mrs. Smith and Mrs. Savage are co-employees under the PWCA and are covered by workmen's compensation insurance provided by Bristol Township. *See* Pa.Stat. Ann. tit. 77, § 1031(a)(2) (Purdon Supp. 1982). As a result, Guffey is entitled to immunity. The fact that it is the defendants who seek to impose liability through contribution or indemnity and not Guffey's co-employees directly does not require a different result. *See Dodick v. Norfolk and Western Railway Co.,* 326 F.Supp. 1154 (W.D.Pa.1971) (summary judgment granted in favor of third party defendant). *Cf. Nationwide Mutual Insurance Co. v. Campbell,* 45 Pa.D. & C.2d 675 (1968). Thus, Guffey is also immune from any liability to defendants based upon a theory of contribution or indemnity. Accordingly, summary judgment in favor of Guffey, as a third-party defendant, is appropriate.

### Motion for Summary Judgment of the Rescue Squad

The resolution of the Rescue Squad's motion for summary judgment is not so simple a matter. The Rescue Squad raises two theories on its behalf. First, they contend it is immune from suit under the PWCA as an employer pursuant to Pa.Stat.Ann. tit. 77, § 481(b) (Purdon Supp.1982). Second, they assert they can not be vicariously liable for Guffey if he is found immune from liability.

■ I begin with the second and easier of these contentions. Defendants admit that the sole basis for recovery against the Rescue Squad is that the latter is vicariously liable as Guffey's employer. Because Guffey can not be liable by reason of the immunity provided co-employees, the Rescue Squad contends it can not be vicariously liable for any negligence of Guffey. This assertion misperceives the nature of vicarious liability.

The policy underlying vicarious liability was stated by Dean Prosser as follows:

---

1. It is uncontested that the applicable law in this diversity action is that of Pennsylvania.

2. In each of these three cases, two plaintiffs are named. One is the employee involved in an accident with a co-employee; the other plaintiff in each is never identified. However, each has the same surname as his or her co-plaintiff. It is fair to assume that these plaintiffs were the spouses of their co-plaintiffs. Thus, the defendants in each case were successful in invoking this immunity provision against both their co-employees and their spouses. Moreover, the language of the statute points to this result as it states the employee shall not be liable "to anyone ... for any act or omission...."

What has emerged as the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of all past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance to the public and so to shift them to society, to the community at large. Added to this is the makeweight argument that an employer who is held strictly liable is under the greatest incentive to be careful in the selection, instruction and supervision of his servants, and to take every precaution to see that the enterprise is conducted safely.

W. Prosser, *The Law of Torts,* § 69, at 459 (1971) (footnotes omitted). The predicate then for finding an employer vicariously liable is that the employee was negligent, not that the latter was liable. The Restatement (Second) of Torts puts it this way:

> When the liability of one party to an action [here the employer] is based entirely upon a wrongful act by another [the employee], a judgment necessarily based upon the finding that the first is liable and the second party is not is inconsistent with itself, *unless the second party has a personal immunity or has been discharged from liability.*

Restatement (Second) of Torts § 883, Comment b (1979). The Restatement (Second) of Agency is even more explicit:

> In an action against a principal based on the conduct of a servant in the course of employment:
>
>     \*    \*    \*    \*    \*    \*
>
>   (b) The principal has no defense because of the fact that: ... (ii) the agent

had an immunity from civil liability as to the act.

Restatement (Second) of Agency § 217 (1958). The latter Restatement section has been relied upon by the Supreme Court of Pennsylvania in *Wicks v. Milzoco Builder's Inc.,* 481 Pa. 554, 393 A.2d 300 (1978). The court held that although a township's Supervisors were immune from liability for their negligence in permitting construction which created drainage problems affecting plaintiffs' property, the township was nonetheless still subject to respondeat superior liability. *Cf. Koontz v. Messer,* 320 Pa. 487, 181 A. 792 (1935) (principal not relieved of respondeat superior liability because of agent's immunity from suit).

Two cases have suggested such a result in construing the PWCA. In *Dodick v. Norfolk and Western Railway Co., supra,* the plaintiffs were injured when the truck they were in collided with the defendant's train. The defendant, in turn, joined the driver of the truck and truck's owner. The driver was awarded summary judgment because of the immunity provided him by section 72. *See* discussion *supra,* at 3. In dictum, however, the court suggests that the owner, who was the driver's employer, might still be vicariously liable to the extent then allowed by the PWCA.

The case relied upon in *Dodick* is *Nationwide Mutual Insurance Co. v. Campbell, supra.* Although not a case involving a third party defendant, it did deal with the issue of contribution by an employee and an employer in a matter involving the PWCA. There, the plaintiff, an insurance carrier, had settled a claim with an injured employee who had been in an accident with the plaintiff's insured. The plaintiff then sought contribution from a co-employee also involved in the accident and their employer. Because the employee had coverage under the PWCA, his co-employee was found immune from liability. The employer, however, did not fare as well:

> A different situation arises with reference to [the employer]. It is true that at common-law the master is liable because of the imputed negligence of his servant.

However, the excusing from liability of the servant under the act does not eliminate the fact that a tort has been committed.

45 Pa.D. & C.2d at 677. Thus, the employer was not freed from the lawsuit because of his employee's immunity.

It is important to note two aspects of these two cases which differ from the case at bar. First, it was unquestioned that the employers in each were "employers" for purposes of the PWCA. By contrast, that issue is hotly contested here. Furthermore, both cases were decided before the passage of Pa.Stat.Ann. tit. 77, § 481(b) (Purdon Supp.1982) which provides immunity for employers from liability to third parties for contribution or indemnity in certain situations. *See* discussion *infra.* Nevertheless, these differences do not change my conclusion that an employer can still be vicariously liable for the negligence of an immune employee.

■ The Rescue Squad's second contention is a troublesome one. They contend that they are immune from contribution and indemnity in this action because of the following provision of the PWCA:

(b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but *the employer,* his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request *shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise,* unless liability for such damages, contribution or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

Pa.Stat.Ann. tit. 77, § 481(b) (Purdon Supp. 1982) (emphasis added). This section has been repeatedly construed by Pennsylvania courts to be a complete shield for employers from defendants seeking contribution or indemnity. *Tsarnas v. Jones & Laughlin Steel Corp.,* 488 Pa. 513, 412 A.2d 1094 (1980); *Bell v. Koppers Co., Inc.,* 481 Pa. 454, 392 A.2d 1380 (1978); *Shaull v. A.S. Beck New York Shoe Co., Inc.,* 369 Pa. 112, 85 A.2d 698 (1952); *Kelly v. Carborundum Co.,* —— Pa.Super. ——, 453 A.2d 624 (Pa. Super.1982); *Heckendorn v. Consol. Rail Corp.,* 293 Pa.Super.Ct. 474, 439 A.2d 674 (1981). *Accord, Lawless v. Central Engineering Co.,* 502 F.Supp. 308 (E.D.Pa. 1980). The term "employer" is defined by the PWCA as "synonymous with master, and to include ... corporations not for profit...." Pa.Stat.Ann. tit. 77, § 21 (1952). The Rescue Squad contends that it had complete control over the plaintiffs in their performance as volunteer members of the squad. Therefore, they continue, the Rescue Squad meets the criteria to qualify as a master and thus as an employer under the PWCA. As a result, they conclude, the squad is entitled to the immunity provided by section 481(b).

Defendants do not dispute the underlying facts upon which the Rescue Squad relies. They do, however, vigorously contest the legal conclusion they draw from those facts. The reason for the disagreement arises from a relatively recent addition to the PWCA which provides as follows:

"[E]mploye" shall also include:

\*　　\*　　\*　　\*　　\*　　\*

(2) all members of volunteer ambulance corps of the various municipalities who shall be and are hereby *declared to be employes of such municipality for the purposes of this act* who shall be entitled to receive compensation in the case of injuries received while actually engaged as ambulance corpsmen or while going to or returning from any fire, accident, or other emergency which such volunteer ambulance corps shall attend ... or while participating in ambulance corps of which they are members; ... or while answering any emergency call for any purpose ...

Act of Dec. 5, 1974, P.L. 782, No. 263, § 15 as amended by Act of Nov. 26, 1978, P.L. 1328, No. 322, § 1 codified at Pa.Stat.Ann. tit. 77, § 1031(a)(2) (Purdon Supp.1982) (emphasis added). Defendants argue that because this section deems the plaintiffs employees of the municipality, in this case Bristol Township, that by implication the "employer" of the plaintiffs for all purposes of the act is the township and not the Rescue Squad. Thus, they concluded, the Rescue Squad should not be entitled to the immunity provided in section 481(b).

The determination of this motion for summary judgment requires the resolution of the dilemma posed by the conflict between section 21 by which the Rescue Squad appears to be an "employer" and section 1031 which implicitly "declare[s]" the township to be the "employer". Put another way—can the plaintiffs have two masters?

As a federal court sitting in a diversity action, I am bound to follow in this case the law of Pennsylvania. Unfortunately, as best as I can determine, no appellate court in the Commonwealth has been called upon to answer the question posed here. Thus, I must undertake the difficult and delicate task of predicting how the Supreme Court of Pennsylvania would decide this issue. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

There is no doubt that absent section 1031 the Rescue Squad would be considered the employer as defined by section 21. The long-standing practice in Pennsylvania has been to turn to the common law for guidance in deciding just who is a PWCA employer: "The rules for determining the existence of the relationship of the employer and employee are the same as those at common law for ascertaining the relationship of master and servant.... " *Workmen's Comp. App. Bd. v. American Mut. L. Ins. Co.,* 19 Pa.Commw.Ct. 502, 506, 339 A.2d 183, 186 (1975), *citing Harris v. Seiavitch,* 336 Pa. 294, 9 A.2d 375 (1939); *English v. Lehigh Cty. Authority,* 286 Pa.Super.Ct.

312, 428 A.2d 1343 (1981). The touchstone of the master-servant relationship is that the former has the right to control the nature and manner of the work to be done by the latter:

It is [the] employer who can, by the exercise of his power over the operations at the work site, reduce the risk of accidents; it is he who directs the fellow servants of the injured workman; and who would, prior to the [PWCA], have enjoyed the benefits of the defenses of the fellow servant doctrine, contributory negligence, and assumption of the risk; and it is the product produced at the worksite that will "bear the blood" of the injured workman, and should therefore reflect the cost of that injury.

*Keller v. Old Lycoming Twp.,* 286 Pa.Super.Ct. 339, 350, 428 A.2d 1358, 1364 (1981). *See English v. Lehigh Cty. Authority, supra; Workmen's Comp. App. Bd. v. American Mut. L. Ins. Co., supra.*

The facts show that between the Rescue Squad and Bristol Township, the former is clearly the entity with the power to control the plaintiffs. The squad decides what equipment to purchase and oversees its maintenance, assigns and schedules the volunteers, dispatches ambulances, stays in radio contact with dispatched ambulances and otherwise has the sole authority to direct the plaintiffs in their duties as volunteers of the squad. In no way does Bristol Township involve itself in the Rescue Squad's operation in general or in plaintiffs' duties specifically. The only chink in this otherwise flawless armor is that it was the township and not the Rescue Squad which supplied the workmen's compensation benefits. This one factor, however, does not undermine the compelling fact that the Rescue Squad otherwise meets the criteria necessary to be an employer under the traditional section 21 analysis. *See Keller v. Old Lycoming Twp., supra.*

What havoc then does section 1031 play with this analysis? A review of the policies behind the relevant PWCA sections is helpful. In 1972 the General Assembly of Pennsylvania undertook an extensive re-

vamping of the Commonwealth's laws governing workmen's compensation. The preamble to the first of several bills effectuating these changes declared the purpose of the law to be "to compensate injury victims to the extent of two-thirds of their wage loss." Act of Feb. 8, 1972, P.L. 25, No. 12, preamble. This statement assumes the injured employees have wages to lose. This idea is contained in the general definition of employee contained in the PWCA: "The term 'employe', as used in this act is declared to be synonymous with servant, and includes—All natural persons who perform services for another for a valuable consideration. . . ." Pa.Stat.Ann. tit. 77, § 22 (Purdon Supp.1982). The General Assembly recognized, however, that certain classes of volunteers who performed public services merited compensation under the PWCA for injuries received while carrying out their Good Samaritan activities. *See* I A. Barbieri, *Pennsylvania Workmen's Compensation and Occupational Disease,* § 4.04 (1975 & Supp.1982). The General Assembly thus enacted section 1031 and its predecessor statute to give these volunteers PWCA benefits.

The reported cases in Pennsylvania interpreting section 1031 typically deal with whether the volunteer was engaged in activity which entitles that person to workmen's compensation benefits as provided by the involved municipality. *See, e.g., Wilmore v. New,* 54 Pa.Commw.Ct. 145, 419 A.2d 1383 (1980); *Workmen's Comp. Appeal Bd. v. Mahoning Twp. Supervisors,* 24 Pa. Commw.Ct. 207, 354 A.2d 604 (1976). I have located no case construing section 1031 where, as here, there is a dispute as to who is the employer for purposes of section 481(b) immunity. One case, though, resolved a conflict over who is the employer responsible for providing workmen's compensation benefits to section 1031 volunteers.

In *City of Philadelphia v. Workmen's Compensation,* 54 Pa.Commw.Ct. 369, 421 A.2d 503 (1980), a member of a Philadelphia volunteer ambulance organization was injured while wheeling a patient into the emergency room of a hospital. There was no question that the plaintiff was a section 1031 employee entitled to benefits. The City, however, argued that it was not responsible for them. The court disagreed. Despite the fact that the City exercised no control over the volunteer ambulance organization and is often unaware of the existence of others, the court nonetheless found that the City was responsible for plaintiff's workmen's compensation benefits.

> The legislature of this state has clearly declared its policy that *all* members of volunteer ambulance corps of the various cities shall be deemed employees of such cities for purposes of workmen's compensation coverage.

*Id.* at 376, 421 A.2d at 506 (emphasis in original).

Defendants assert that a logical extension of this interpretation is that the municipality responsible for providing benefits is the "employer" entitled to the immunity supplied by section 481(b). Language in some Pennsylvania cases discussing the section suggests such an extension:

> The policy consideration which prompted the enactment of Section [481(b)] is clear. An employer's liability for an industrial accident is limited to an amount determined by the Workmen's Compensation Act. If he assumes that liability . . . he cannot be made a party to his employee's common law action for negligence against a third person.

*Heckendorn v. Consol. Rail Corp.,* 293 Pa. Super.Ct. at 477, 439 A.2d at 675. Similarly, the court in *Hefferin v. Stempkowski,* 247 Pa.Super.Ct. 366, 372 A.2d 869 (1977) found that the reason for including section 481(b) as one of many changes made in 1972 was the recognition that the changes would result in increased costs to employers.

From these cases alone, it would seem that the entity which paid the workmen's compensation benefits would be the employer entitled to section 481(b) immunity. This has not always been the case, however.

In *Keller v. Old Lycoming Twp.,* 286 Pa. Super.Ct. 339, 428 A.2d 1358 (1981), the

plaintiff was the executrix of the estate of an employee killed on the job. At the time of his death, the decedent was working through the Comprehensive Employment and Training Act ("CETA"). The Service Training and Education Programs ("STEP") organization administered certain aspects of the CETA program. The decedent's wages, medical insurance and workmen's compensation were paid by STEP with CETA funds. Moreover, STEP provided a grievance procedure for CETA workers. In addition, a STEP coordinator visited the worksites to which CETA workers were assigned to ensure proper performance.

At the time of his death, the decedent was working on a project of Old Lycoming Township. The question arose as to who was his employer for purposes of section 481(b) immunity. Despite the several aspects of the decedent's work with which STEP was involved, the court still concluded that the township was his employer for workmen's compensation purposes because it "controlled the activities at the worksite and directed the conduct of [the decedent] and his fellow employees while they were there". *Id.* at 347, 428 A.2d at 1362. The fact the township did not pay the workmen's compensation benefits did not require a different result:

> It is true that the federal government, through its CETA program, bore the cost of purchasing workmen's compensation insurance for [the decedent]. The fact that the federal government chose to assume this cost does not mean, however, that it had to assume it. Had the federal government not assumed the cost the township would have had to.[10]

---

[10] A question of policy may be raised as to the propriety of thus shifting the burden of paying for workmen's compensation insurance, since by so doing, it might be argued, an employer avoids a cost that might otherwise encourage him to promote safety measures at the worksite. However this may be one may not alter his status as employer under the Act, merely because another party has undertaken the cost of insuring against worksite injuries. *Id.* at 351 & n. 10, 428 A.2d at 1362 & n. 10.

Similarly, in *English v. Lehigh Cty. Authority*, 286 Pa.Super.Ct. 312, 428 A.2d 1343 (1981), the executrix of a deceased employee sued the Lehigh County Authority which had contracted for workers with Kelly Labor which provided temporary workers of which the decedent was one. Kelly Labor paid the decedent's salary, withheld taxes and social security payments, paid unemployment compensation tax and maintained the decedent's workmen's compensation insurance. Decedent died while working on the Authority's project. Applying traditional section 21 analysis, the court concluded that the Authority was the employer of the borrowed employee entitled to immunity:

> [W]hile Kelly Labor paid its workers' wages and unemployment compensation tax, carried its workers' workmen's compensation insurance, and withheld federal, state, and local taxes from its workers' wages, it risked none of its own money, for it made these payments from the monies it received from its customers. The mere fact that one incurs expenses normally associated with an employment relationship does not necessarily mean that one is an "employer" within the meaning of the Workmen's Compensation Act.

*Id.* at 325, 428 A.2d at 1350.

In *Cranshaw Const. Inc. v. Ghrist*, 290 Pa.Super.Ct. 286, 434 A.2d 756 (1981), the court discussed section 481(b) immunity in a different context. There the plaintiff, an injured employee of a sub-contractor, sued the general contractor of the job on which he was hurt. The court concluded that the general contractor was a statutory employer by virtue of Pa.Stat.Ann. tit. 77, § 52 (Purdon 1952).[3] As such, the contractor

---

**3.** Section 52 provides:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

was entitled to section 481(b) immunity even though the sub-contractor had paid for the employee's workmen's compensation.[4]

The above cases are all distinguishable from the case before me. The most important difference from the first two is that they did not have before them a specific provision which declared the employees to be employees of a particular entity. The last case is more on point. In *Cranshaw* the controlling factor was that the entity entitled to immunity had satisfied the criteria set down in a specific provision of the PWCA. By virtue of this special section, traditional section 21 analysis had no relevance. Such is the case here. Although the Rescue Squad meets the test to be a "master" as required by section 21, the plaintiffs fail to meet the requirements of the companion statute of section 21, section 22, which defines "employe[s]" as "all natural persons who perform services for another for a valuable consideration...." The Rescue Squad cannot have it both ways; it cannot look to part of section 1031 when section 22 fails it in order to classify the plaintiffs as employees and then ignore the rest of section 1031 which implicitly deems the township as the relevant employer in favor of section 21 analysis.

This interpretation is also in keeping with the mandate of Pennsylvania's Statutory Construction Act. That Act requires "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.Cons.Stat.Ann. § 1921(b) (1982). *See Davis v. Government Employees Insurance Co.,* —— Pa. ——, 454 A.2d 973 (Pa.1982). I can find no ambiguity in section 1031. Thus I must interpret it as it is written.

Moreover, this result is·a logical extension of a decision of the Pennsylvania Su-

preme Court prior to the enactment of both sections 481(b) and 1031. In *Brinker v. Greensburg,* 409 Pa. 110, 185 A.2d 593 (1962), a member of a volunteer fire company sued both the driver of a fire truck and the city of Greensburg when his car collided with the truck. The city averred that because the plaintiff was acting as a volunteer fireman at the time of the accident, he was covered by workmen's compensation pursuant to section 1031's predecessor statute, Pa.Stat.Ann. tit. 77, § 22a (Purdon 1952), repealed by Act of Dec. 5, 1974, P.L. 782, No. 263, § 17.[5] The limit of its liability to the plaintiff then, the city contended, was the workmen's compensation it had provided plaintiff.

The plaintiff made an argument that because he was not a "general employee" of the city, he should not be barred from seeking recovery against the city. The court rejected this contention:

> [T]he "obvious purpose of the [PWCA] was not only to limit the rights of employers and employees, but also to protect both parties from the hazards and expense of negligence litigation" and "the [PWCA] established a standard of compensation to be paid the employee as a ceiling on the employer's liability in such cases."

*Id.* at 113, 185 A.2d at 594, *quoting J.W. Brown, Jr. Equipment Rental Corp. v. Dickey,* 397 Pa. 454, 458, 155 A.2d 836, 838 (1959).

Although there was no discussion in *Brinker* concerning what control the city had over the plaintiff and the fire company, I believe none was necessary given the language of the controlling statute. Neither the *Brinker* court nor courts construing section 1031, albeit in different contexts, ever seriously questioned that the municipality is the relevant employer under PWCA. *See*

---

**4.** The PWCA provides that the contractor is liable for workmen's compensation unless the sub-contractor has already arranged for coverage. Pa.Stat.Ann. tit. 77, §§ 461–62 (Purdon Supp.1982).

**5.** Section 22a provided: "there shall be included [in the definition of employe] all members of

volunteer fire companies or volunteer fire departments of the various cities, boroughs, incorporated towns, and townships, who shall be and are hereby declared to be 'employes' of such cities, boroughs, incorporated towns, townships, for all the purposes of [the PWCA]...."

*City of Philadelphia v. Workmen's Compensation, supra; Wilmore v. New, supra; Workmen's Comp. Appeal Bd. v. Mahoning Twp. Supervisors, supra.* It would be patently unreasonable for the General Assembly to foist upon the various municipalities the cost of workmen's compensation insurance without affording them the protection given all other employers under the PWCA. Therefore, I am satisfied that Bristol Township is the plaintiffs' employer under the PWCA.

This conclusion does not entirely resolve the matter. Can an employee have two employers under the PWCA, both of whom are entitled to immunity under 481(b)? Although there is no clear precedent, the Pennsylvania Superior Court has indicated that the answer is no.

In *English v. Lehigh Ct. Authority, supra,* both the township and Kelly Labor asserted that they were immune under section 481(b). The court stated that although Kelly Labor's appeal from the trial court's denial of their motion for summary judgment after finding the township to be the decedent's employer was interlocutory and thus should be quashed, the court nonetheless recognized that its decision that the township was indeed the decedent's employer by implication found Kelly Labor was not. 286 Pa.Super.Ct. at 317, n. 1, 428 A.2d at 1346 n. 1. Similarly, the court in *Keller v. Old Lycoming Twp., supra,* affirmed the trial court's finding that the township, and not STEP, was the decedent's employer. 286 Pa.Super.Ct. at 342–43, 428 A.2d at 1360.

By implication, then, the Superior Court in applying section 21 analysis, has concluded only one entity can be an employer for purposes of the PWCA. I can discern no reason why the result should be different under section 1031. Although I am not bound by these decisions absent a ruling by the state's highest court which is on point, I am required to give them, "proper regard". *Hamme v. Dreis & Krump Mfg. Co.,* 512 F.Supp. 944, 948 (M.D.Pa.1981), *aff'd per curiam,* No. 81–2174 (3d Cir. April 12, 1982). As a result, I am persuaded that Bristol Township, and only the township, is

an employer entitled to section 481(b) immunity.

In sum, section 481(b) immunity is a trade-off for providing workmen's compensation benefits to employees. The Levittown-Fairless Hills Rescue Squad does not supply the benefits. Therefore, it is not entitled to the statutory immunity.

Accordingly, the Rescue Squad's motion for summary judgment is denied.

### ORDER

AND NOW, this 17th day of JANUARY, 1982, it is hereby

ORDERED that the Motion for Summary Judgment filed on behalf of the Levittown-Fairless Hills Rescue Squad is DENIED.

It is further

ORDERED that the Motion for Summary Judgment filed on behalf of Robert Guffey as third-party defendant is GRANTED and JUDGMENT is hereby entered in favor of the third-party defendant Robert Guffey and against Michael J. Logan and William R. Meeker, Inc. as third-party plaintiffs.

### UPON RECONSIDERATION

The Rescue Squad has sought reconsideration of my decision on their motion for summary judgment. On February 8, 1983, I denied their motion. This memorandum sets forth the reasons for that decision.

One of the squad's arguments is that they are entitled to section 481(b) immunity regardless of whether the township is also so entitled. I still conclude that given the circumstances of this case, only one entity qualifies for immunity and that entity is the township.

Although the Rescue Squad meets the criteria to be a section 21 employer, this is only half the battle to win section 481(b) immunity. They still must get by section 21's companion statute, section 22, which defines "employe" as "[a]ll natural persons, who perform services for another for a valuable consideration...." The plaintiff employees fail to qualify as they are all volunteers. They are considered employees

for purposes of the PWCA solely by virtue of section 1031 which deems them employees of the township. As a result, I have concluded that traditional section 21 analysis is inapplicable.

The Rescue Squad's reliance by analogy on section 52 of the PWCA is of no help.[1] In essence, this section deems a general contractor a "statutory employer" of the employees of the subcontractor, those same employees' section 21 employer. The squad analogizes that the township is akin to the general contractor (the statutory employer) and that the Rescue Squad is akin to the subcontractor (the traditional section 21 employer). Thus, they assert, both are entitled to section 481(b) immunity. However this analogy fails on one major aspect. A subcontractor and its employees no doubt meet the criteria set forth in both sections 21 *and* 22; the rescue squad and its volunteers do not. The short of it is that the squad fails to fully qualify as an employer under the PWCA and thus cannot invoke its immunity.[2]

The Rescue Squad also raises some new grounds in their motion for reconsideration. First, they assert that the squad is the "representative [ ] acting on ... behalf" of Bristol township as contemplated by section 481(b) and thus is entitled to its immunity. The squad has not brought to my attention nor have I located any case defining or discussing the meaning of "representative" in section 481(b). Thus I must give the word its "common and approved usage." 1

Pa.Cons.Stat.Ann. § 1903(a) (1982). Webster's Third New International Dictionary (1971) has many definitions; one seems particularly appropriate here: "standing for or in the place of another: acting for another or others: constituting the agent for another esp. through delegated authority." *Id.* at 1926.

The Rescue Squad has admitted that Bristol township is not involved in or consulted about the running of the Rescue Squad in any fashion. As a result, I cannot conclude that the squad "represents" the township or acts on its behalf. The Rescue Squad's strained interpretation of the language in section 1031 is unpersuasive.[3]

The Rescue Squad's second new contention is that it is immune from liability under the common law because of the fellow servant doctrine. This contention too must fail. The PWCA has abolished the availability of this defense in a case such as this:

> In any action brought to recover damages for personal injury to an employe in the course of his employment, or for death resulting from such injury, it shall not be a defense—
>
> (a) That the injury was caused in whole or in part by the negligence of a fellow employe....

Pa.Stat.Ann. tit. 77, § 41 (Purdon 1952). *See Allen v. Leshner,* 224 Pa.Super.Ct. 327, 330–31 n. 5, 306 A.2d 916, 917–18 n. 5 (1973). The *Allen* case cited by the Rescue Squad does not support their proposition as that case involved employees not covered by the

---

1. See note 3 in my opinion dated January 17, 1983.

2. The rescue squad takes issue with my earlier conclusion that there can be only one employer entitled to section 481(b) immunity. Relying on section 52 as analogous support, they assert that this is not true in this case. I concede that the two cases cited by the squad, *Capozzoli v. Stone & Webster Engineering Corp.,* 352 Pa. 183, 42 A.2d 524 (1945) and *Cranshaw Construction, Inc. v. Ghrist,* 290 Pa.Super.Ct. 286, 434 A.2d 756 (1981) suggest that both a section 52 statutory employer and the traditional sectional employer would be entitled to section 481(b) immunity. However, this does not change my decision. As set forth in the text, this situation is not sufficiently analogous to the case before me to conclude that both the

squad and the township are entitled to section 481(b) immunity. Thus I am still convinced that there is only one employer of volunteers such as plaintiffs here who is entitled to immunity.

3. The language they rely upon is "members of volunteer ambulance corps *of the* various municipalities" (emphasis added). *See* Pa.Cons.Stat.Ann. Tit. 77, § 1031(a)(2) (Purdon Supp. 1982). This, they assert, deems the volunteer corps representatives of the relevant township. That conclusion is hardly evident from the language of the statute. As stated in my earlier opinion, the General Assembly enacted section 1031 to ensure volunteers in certain activities were guaranteed workmen's compensation.

PWCA. Here the plaintiffs were covered. Therefore, section 41(a) prevents the squad from raising the fellow servant doctrine.

As a last effort, the Rescue Squad raises a policy argument. The squad contends that if they are held vicariously liable for any negligence of Guffey, then they could turn to Guffey for indemnity. They argue that the General Assembly could not have intended that employees in Guffey's situation ever be held personally liable for their volunteer activities. I agree. The General Assembly has, in fact, made sure this would not happen:

> If disability or death is compensable under this act, a person shall not be liable *to anyone* at common law or otherwise on account of such disability or death for any act of omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

Pa.Stat.Ann. tit. 77, § 72 (Purdon Supp. 1982) (emphasis added). As stated in my earlier memorandum, Guffey's fellow passengers were covered by workmen's compensation. Therefore, they are Guffey's co-employees under the PWCA. As a result, Guffey can not be found liable for any injuries to them or their spouses either directly or by way of indemnity.

Accordingly, the Rescue Squad's motion for reconsideration will be denied.