J-S10020-15

2016 PA Super 31

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ASTRA FOODS INC., JOSE NOE CASTILLO RAMOS, AND AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY | |
| APPEAL OF: ASTRA FOODS INC. | No. 1392 EDA 2014 |

Appeal from the Order dated March 19, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No: February Term, 2012 No. 00902

BEFORE:  GANTMAN, P.J., STABILE, and PLATT,[*] JJ.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 12, 2016**

Appellant/defendant Astra Foods Inc. ("Astra") appeals from the March 19, 2014 order of the Court of Common Pleas of Philadelphia County (trial court), which granted summary judgment in favor of Appellee/plaintiff Westfield Insurance Company ("Westfield Insurance") and denied Astra's cross-motion for summary judgment.  Upon review, we affirm.

The facts and procedural history underlying this appeal are undisputed.  As summarized by the trial court in its Pa.R.A.P. 1925(a) opinion:

_____

[*] Retired Senior Judge assigned to the Superior Court.

> This is an appeal taken from [the trial court's] grant of a [m]otion for [s]ummary [j]udgment in an insurance coverage dispute regarding a workplace injury suffered by Jose Noe Castillo Ramos (Ramos) while employed by BK Packaging Services, Inc. (BK) (formerly known as JRI Contracting Services, Inc.) at a facility operated by [Astra]. In 2009, Ramos suffered a severe injury to his hand and arm while cleaning an exhaust fan, for which he filed a workers' compensation claim.
>
> In January 2012, Workers' Compensation Judge [(WCJ)] Denise Krass rendered a decision on Ramos' claim. Her decision included a finding that Ramos was employed by BK, and that Ramos was not a "borrowed employee" of Astra at the time of the injury. [Westfield Insurance], which had issued both a [commercial general] liability policy [(CGL Policy)] and a workers' compensation policy to Astra, was a party to that proceeding. As a result of [WCJ] Krass' ruling, there was no coverage for Ramos' injuries under the Westfield [Insurance] workers' compensation policy.
>
> In June 2013, a jury verdict was rendered for Ramos against Astra in a personal injury action, and [Ramos] was awarded $763,413. Westfield [Insurance] filed a declaratory judgment action, arguing that the [CGL Policy] did not cover the incident. Westfield [Insurance] and Astra filed cross-motions for summary judgment,[1] and the [trial court] granted summary judgment for Westfield [Insurance] and denied it for Astra.

Trial Court Rule 1925(a) Opinion, 7/31/14 at 1-2. Astra subsequently moved for reconsideration of the trial court's summary judgment order. In response, the trial court issued an order vacating its summary judgment order and directing Westfield Insurance to file a response to the reconsideration motion. On March 19, 2014, the trial court issued an order reinstating its summary judgment order "with the exception that the

_____

[1] Westfield Insurance specifically argued that the "employer's liability" exclusion provision of the CGL Policy applied to this case, barring Astra from obtaining a defense and indemnity in the underlying action because Ramos was an employee of Astra's by satisfying the definition of "leased worker" under the CGL Policy. *See* Westfield Insurance's Summary Judgment Motion, 7/19/13, at ¶¶ 43-44.

statement that [American Guarantee and Liability Insurance Company (AGLIC)] was in privity with Astra is stricken."[2]  Trial Court Order, 3/19/14. Astra timely appealed to this Court.[3]

On appeal, Astra raises the following issues for our review:

1.  Whether the grant of motion for summary judgment in favor of [Westfield Insurance] constituted an error of law and/or an abuse of discretion when such opinion and order was based upon the following:

(i) in disregarding an adjudication in a prior action that Ramos was not an Astra employee and failing to apply the doctrine of collateral estoppel to preclude Westfield [Insurance] from asserting otherwise in the action[;]

(ii) in failing to apply the doctrine of judicial estoppel to preclude Westfield [Insurance] from taking inconsistent positions with regard to Ramos' employment status in the action[; and]

(iii) in failing to declare that the [CGL Policy] exclusion categorizing Ramos as an employee by defining him as a leased worker properly excluded from coverage under [the CGL Policy] is unconscionable and void as against public policy[.]

2. Whether the denial of [Astra's] cross-motion for summary judgment constituted an error of law and/or an abuse of discretion when such opinion and order was based upon disregarding a finding in a prior adjudication that Ramos was not an employee or borrowed employee of Astra.

Astra's Brief at 9 (capitalization omitted).

We are mindful that:

[o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is

_____

[2] Astra's umbrella insurer and additional defendant AGLIC is not a party to this appeal.

[3] Our review of the docket indicates that the trial court did not order Astra to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013) (quoting *Cassel-Hess v. Hoffer*, 44 A.3d 80, 84-85 (Pa. Super. 2012)).

Astra first argues the trial court erred in granting Westfield Insurance's summary judgment motion because Westfield Insurance was barred by the doctrine of collateral estoppel from challenging Ramos' employment status with Astra. In this regard, Astra argues that the CGL Policy's definition of a leased worker—who is considered an employee—is identical to the doctrine of borrowed employee, which was at issue in the prior workers' compensation proceeding in which Westfield Insurance participated. Astra's Brief at 16-17. Astra, therefore, argues that, because WCJ Krass determined Ramos was not employed by Astra on the basis of the borrowed employee doctrine, Westfield Insurance must be barred from re-litigating the issue of Ramos' employment status with Astra under the terms of the CGL Policy. *Id.* We disagree.

It is settled that:

Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom

- 4 -

the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. Collateral estoppel, sometimes referred to as issue preclusion, operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit.

*Kituskie v. Corbman*, 682 A.2d 378, 382 (Pa. Super. 1996) (citations and quotation marks omitted).

The decision to allow or to deny a prior judicial determination to collaterally bar relitigation of an issue in a subsequent action historically has been treated as a legal issue. As such, this Court is not bound by the trial court's conclusions of law and we may draw our own conclusions from the facts as established.

*Meridian Oil & Gas Enters., Inc. v. Penn Cent. Corp.*, 614 A.2d 246, 250 (Pa. Super. 1992), *appeal denied*, 627 A.2d 180 (Pa. 1993).

As with all questions of law, an appellate court's review of an insurance contract is plenary. *Burton v. Republic Ins. Co.*, 845 A.2d 889, 893 (Pa. Super. 2004). In interpreting the terms of an insurance contract, the appellate court examines the contract in its entirety, giving all of the provisions their proper effect. *Id.* The court's goal is to determine the intent of the parties as exhibited by the contract provisions. *Id.* In furtherance of its goal, the court must accord the contract provisions their accepted meanings, and it cannot distort the plain meaning of the language to find an ambiguity. *Id.*

Instantly, Astra does not dispute that the terms of the CGL Policy are reasonable and unambiguous or that Ramos failed to satisfy the definition of a leased worker under the CGL Policy. *See* Astra's Brief at 22. Rather, Astra argues only that the contractual definition of a leased worker is

identical to the legal doctrine of borrowed employee, which was litigated before WCJ Krass. As a result, Astra argues that the doctrine of collateral estoppel precludes Westfield Insurance from re-litigating Ramos' employment status with Astra. We, however, reject Astra's collateral estoppel argument because the doctrine of borrowed employee at issue in the workers' compensation proceedings is not identical to the definition of a leased worker under the CGL Policy. In other words, in this case, the **legal** doctrine of borrowed employee is not identical to the **contractual** definition of a leased worker.

Explaining the doctrine of borrowed employee, our Supreme Court has remarked:

> The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. The payment of wages may be considered, but is not a determinative factor. Although the examination of these factors guides the determination, each case must be decided on its own facts.

*JFC Temps, Inc. v. Workers' Comp. Appeal Bd. (Lindsay)*, 680 A.2d 862, 864 (Pa. 1996) (citation omitted); *accord Mullins v. Sun Co.*, 763 A.2d 398, 400 (Pa. Super. 2000). Under the CGL Policy, a leased worker is defined as "a person leased to [Astra] by a labor leasing firm under an agreement between [Astra] and the labor leasing firm, to perform duties

related to the conduct of [Astra's] business." CGL Policy, 4/1/09, at §§ I(2)(e), V(5), (10).

Here, a cursory look at the elements of the doctrine of a borrowed employee and the contractual definition of a leased worker reveals glaring differences between the two. "The definition of 'borrowed employee,' . . . comes from case law and is clearly much narrower than the definition of 'leased worker,' as it focuses on which party controls the worker's performance, and the manner in which it is performed." Trial Court Rule 1925(a) Opinion, 7/31/14, at 3. Thus, upon careful review of the entire record, viewed in the light most favorable to Astra as the non-moving party, we must agree with the trial court's conclusion that the issue of a leased worker under the CGL Policy was never properly before WCJ Krass because the CGL Policy was not at issue in the workers' compensation proceeding. As the trial court noted:

> [T]he legal question of [Ramos'] employment status considered by [WCJ Krass] is not identical to the question of Ramos' employment status under the [CGL] Policy. [WCJ] Krass considered whether Ramos was a "borrowed employee" according to the common law, while [the trial court] must determine whether Ramos meet the definition of "leased worker" under the [CGL] Policy.

Trial Court Opinion, 12/30/13, at 5-6. Accordingly, the trial court did not err in granting summary judgment in favor of Westfield Insurance and against

Astra by concluding that the doctrine of collateral estoppel did not apply to whether Ramos was a leased worker under the CGL Policy.[4]

Astra next argues the trial court erred in granting summary judgment in favor of Westfield Insurance, because Westfield Insurance was judicially estopped from challenging Ramos' employment status with Astra. In particular, Astra argues that Westfield Insurance's position on Ramos' employment status in the case *sub judice* is inconsistent with Westfield Insurance's position before WCJ Krass, where Westfield Insurance asserted that Ramos was not a borrowed employee of Astra.

> Our Supreme Court has held that as a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. Accordingly, judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; *and* (2) that the appellant's contention was successfully maintained in that action.

*Black v. Labor Ready, Inc.*, 995 A.2d 875, 878 (Pa. Super. 2010) (citations and quotation marks omitted) (emphasis in original). "The purpose of this doctrine is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires." *Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 912 (Pa. Super. 2007) (citation and quotation marks omitted). However, "[o]ur Supreme Court has not definitively established whether the second element

---

[4] Because we conclude Astra failed to satisfy the first prong of the collateral estoppel doctrine, we need not analyze the other four prongs.

(successful maintenance) is strictly necessary to implicate judicial estoppel or is merely a factor favoring the application." *Vargo v. Schwartz*, 940 A.2d 459, 470 n.8 (Pa. Super. 2007) (citing *In re Adoption of S.A.J.*, 838 A.2d 616, 620 n.3 (Pa. 2003)); *see also Ballestrino v. Ballestrino*, 583 A.2d 474, 478 (Pa. Super. 1990) (holding that "it is not improper for the court to refuse to entertain a later claim" which is inconsistent with a previous position that appellant did not successfully maintain but from which she obtained other relief).

Instantly, we need not address Astra's judicial estoppel argument because, based upon our review of the entire record, we conclude that Astra has waived this argument by failing to raise it before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see Agostinelli v. Edwards*, 98 A.3d 695, 700 (Pa. Super. 2014). However, even if we were to address the merits of Astra's judicial estoppel argument, we would reject the argument because Westfield Insurance never assumed any position before WCJ Krass with respect to the definition of a leased worker under the CGL Policy. As noted earlier, the CGL Policy or its terms were not at issue in the workers' compensation proceeding.

We now turn to Astra's third argument. Astra argues the trial court erred in granting summary judgment in favor of Westfield Insurance based on the CGL Policy because the employer's liability exclusion provision of the CGL Policy at the core of this case "is unconscionable and against public

policy because it results in illusory coverage, and provides [Westfield Insurance] with a windfall from the substantial premiums collected from Astra while providing no coverage" under either the workers' compensation policy or CGL Policy. Astra's Brief at 23. We construe Astra's argument as challenging the inclusion of a "leased worker" in the employer's liability exclusion of the CGL Policy. Simply put, Astra finds it unconscionable that the term "employee" in the CGL Policy includes a leased worker. Thus, we must determine whether the employer's liability exclusion of the CGL Policy—with respect to a leased worker—is unconscionable as against public policy. As our Supreme Court has explained:

> Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy. Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term public policy is vague, there **must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. Only dominant public policy would justify such action**. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the [c]ourt should not assume to declare contracts contrary to public policy. The courts must be content to await legislative action.
>
> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring that the contract is against public policy.

*Heller v. Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213, 1220-21 (Pa. 2011) (citation and quotation marks omitted) (emphasis added).

Here, as noted above, Astra does not argue the employer's liability exclusion provision of the CGL Policy, which includes a leased worker, is unclear or ambiguous.[5] Rather, it argues only that the exclusion provision is against public policy to the extent it includes a leased worker. In support of its public policy argument, Appellant points out that "[u]nder the factual circumstances of this case, . . . the 'leased workers' exclusion works to preclude coverage under both companion policies issued by Westfield Insurance, resulting in Westfield Insurance insulating itself from affording coverage under either policy, making the coverage illusory."[6] Astra's Brief at 22.

Astra principally relies on **Heller** to underscore its claim that the CGL Policy is illusory and therefore against public policy. Appellant's reliance on **Heller**, however, is misplaced, as **Heller** is distinguishable from the instant case. In **Heller**, our Supreme Court was asked to determine whether "it [was] a violation of public policy to exclude from underinsured motorist (UIM) coverage a claim by an individual eligible for workers' compensation benefits." **Heller**, 32 A.3d at 1215. The appellant (Heller) was severely injured in an automobile accident during the course of his employment as a

_____

[5] With the exception of the inclusion of a leased worker within the definition of employees, Astra accepts the employer's liability exclusion provision of the CGL Policy. **See** Astra's Brief at 22.

[6] As stated earlier, Westfield Insurance issued to Astra a workers' compensation policy as well as the CGL Policy.

- 11 -

police officer for Sugarcreek Borough. *Id.* Subsequently, Heller sought UIM benefits from the borough under a policy issued by the appellee, who ultimately denied Heller's claim under a policy exclusion providing that UIM coverage did not apply to "[a]ny claim by anyone eligible for workers' compensation benefits." *Id.*

The Supreme Court noted that the borough voluntarily elected to purchase the optional UIM coverage and paid a premium to the appellee for the coverage. *Id.* at 1222. The Supreme Court therefore found persuasive Heller's argument that the borough purchased illusory coverage. *Id.* at 1223, 1228. As the Supreme Court observed:

> Instantly, we are presented with the situation where a mandatory offering under the [Motor Vehicle Financial Responsibility Law (MVFRL)] was accepted by the [b]orough, who paid a premium for UIM coverage to provide additional protection to its employees who operate or occupy its vehicles. The vehicles in question are used by borough employees during the course and scope of their employment. Thus, **the vast majority of all UIM claims likely will be made by borough employees who are eligible for workers' compensation**. The subject exclusion, however, operates to deny UIM benefits to anyone who is eligible for workers' compensation. **Therefore, we find that [the appellee] sold the borough additional coverage that, in effect, will not attach by virtue of an exclusion**. Under the facts of this case and as applied to borough employees, **the exclusion renders the coverage illusory**. Further, the exclusion operates to convert [the appellee's] statutory obligation into a sham offering. [The appellee] received a windfall by charging the borough a premium for the coverage.

*Heller*, 32 A.3d at 1223 (emphasis added). The court further remarked:

> To uphold the exclusion would thwart the purpose of the MVFRL by allowing an insurer to deny benefits for which their insured paid a premium. Thus, permitting the exclusion to stand provides a disincentive for insureds to pay premiums for coverage that is not statutorily required and relieves the insurer of its obligation to provide benefits for which the insured paid. While the borough may have received a reduced premium in

exchange for what [the appellee] deems "limited" coverage, an insured cannot contract for illusory coverage.

*Id.*, at 1225. The court also determined that the "workers' compensation exclusion violated the statutory scheme for coordination of benefits evident in the MVFRL" because the legislature intended "to place the burden for payment of benefits on the tortfeasor or the UM/UIM carrier where a third-party causes a work-related injury." *Id.*

The case *sub judice* is distinguishable from **Heller**. First, Astra does not argue that Westfield Insurance, unlike the appellee in **Heller**, was required to offer coverage to Astra for personal injury claims made by workers not directly employed by Astra. Second, unlike **Heller**, where the borough specifically purchased optional UIM coverage for its employees, the vast majority of whom were eligible for workers' compensation, Astra does not argue it purchased the CGL Policy to insulate itself principally against personal injury claims made by workers not directly employed by Astra. The record indicates Astra principally purchased the CGL Policy from Westfield Insurance to cover itself against third-party (non-employee) liability claims. The leased worker exclusion simply is an **exception** to such coverage because leased workers are subsumed within the definition of employees under the CGL Policy. Third, unlike the appellant in **Heller**, Astra does not allege that the employer's liability exclusion—with the exception of a leased worker—"***operates to foreclose the majority of expected claims***" under the CGL Policy. *Id.* at 1228 (emphasis added); *see also* ***Meridian Mut. Ins. Co. v. Richie***, 544 N.E.2d 488, 489 (Ind. 1989) (holding that if an

- 13 -

insured could not have benefited from his insurance coverage under ***any set of circumstances***, the policy is illusory and in violation of public policy) (emphasis added). On the contrary, Astra asserts only that "[***u***]***nder the factual circumstances of this case***," the exclusion renders the CGL Policy illusory because of how it defines a leased worker, *i.e.*, as an employee. Astra's Brief at 21, 22 ("The exclusion of leased [workers] in the [CGL P]olicy at issue is void against public policy under the factual circumstances of this case[.]") (emphasis added).

In summary, because Westfield Insurance was not required to offer coverage to Astra for personal injury claims by workers not directly employed by Astra, Astra did not purchase the CGL Policy principally to cover leased workers, and the leased worker exclusion does not operate to foreclose the vast majority of Astra's expected claims, we decline to hold the CGL Policy illusory, and therefore as against public policy.[7] ***See Heller***, ***supra***.

Order affirmed.

Platt, J. joins the majority opinion.

Gantman, P.J. files a concurring opinion in which Platt, J. joins.

---

[7] Based on the outcome of this case, we need not address Astra's remaining arguments.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/12/2016</u>