IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Lynn Nagle, :
Executor of the Estate of :
Douglas Edward Bell, Deceased, :
                   Appellant :
 :
          v. :
 :
TrueBlue, Inc., Labor Ready, Inc. :
and Labor Ready Northeast, Inc. : No. 247 C.D. 2016
and Rye Township : Argued: September 13, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE P. KEVIN BROBSON, Judge (P.)
              HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                    FILED: October 24, 2016


      Jeffrey Lynn Nagle (Nagle), as executor of Douglas Edward Bell's (Bell) estate, appeals from the January 29, 2016 order of the Court of Common Pleas of the 41st Judicial District (Perry County Branch) (trial court) granting TrueBlue, Inc.'s, Labor Ready Inc.'s and Labor Ready Northeast, Inc.'s (collectively, Labor Ready)[1] and Rye Township's (Township) motions for summary judgment (Motions), and dismissing Nagle's complaint (Complaint). Nagle presents two issues for this Court's review: (1) whether the trial court erred by determining that equitable principles preclude Nagle from suing Labor Ready and, (2) whether the trial court erred by concluding that Labor Ready and the Township were entitled to immunity under the Workers' Compensation Act (Act).[2] After review, we affirm.

---

    [1] According to Labor Ready, Defendant-Appellees are "TrueBlue, Inc., formerly known as Labor Ready, Inc., and its wholly owned subsidiary Labor Ready Northeast, Inc. (collectively referred to as 'Labor Ready.')." Labor Ready Br. at 3.
    [2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1-1041.4, 2501-2708.

Bell was hired by Labor Ready, an employment agency, to furnish temporary services. Labor Ready and the Township had an agreement under which Labor Ready would furnish the Township temporary labor. On October 18, 2010, Labor Ready instructed Bell to report to work for the Township. The Township assigned Bell to work on the back of a Township trash truck. Township employee Bradley Sloop (Sloop) instructed Bell regarding the job.[3] Sloop testified that, after successfully making a few stops, while the truck was still moving, Bell "step[ped] back like he was getting off the truck and he fell." Reproduced Record (R.R.) at 650a; *see also* R.R. at 647a. Bell sustained serious injuries that ultimately resulted in his death on August 25, 2011.

As a result of Bell's work injury, Labor Ready's workers' compensation insurance carrier paid approximately $770,000.00 in workers' compensation benefits.[4] On February 14, 2011, Nagle filed a penalty petition alleging that Labor Ready "has failed to [timely] pay wage loss benefits." R.R. at 552a; *see also* R.R. at 549a-551a, 553a. The penalty petition was resolved by March 23, 2011 stipulation, wherein Nagle and Labor Ready agreed that "Defendant/[E]mployer" Labor Ready would pay a lump sum of $900.00. R.R. at 552a; *see also* R.R. at 553a. The Township did not participate in the workers' compensation proceedings.

On December 1, 2011, Nagle filed a writ of summons with the Dauphin County Common Pleas Court. After conducting pre-pleading discovery, Nagle filed his Complaint with the Dauphin County Common Pleas Court on July 6, 2012

---

[3] Sloop stated that his instruction was essentially: "[G]et on the truck, . . . hold on and don't get off until the truck stops." Reproduced Record (R.R.) at 971a.; *see also* R.R. at 631a (Township road worker/trash truck driver Michael Miller testified that Sloop gave Bell an approximately 10-minute explanation).

[4] By February 17, 2011 decision, as a result of Nagle's appointment as Bell's guardian, the workers' compensation judge ordered "that the indemnity compensation checks shall be made payable to and issued to . . . Nagle." R.R. at 547a; *see also* R.R. at 544a-576a.

asserting negligence, wrongful death and survival claims against Labor Ready and the Township.[5] The case was transferred to the trial court on May 5, 2014.[6]

In June 2014, Labor Ready and the Township filed preliminary objections claiming they were entitled to immunity under Section 303(a) of the Act, 77 P.S. § 481(a). On December 19, 2014, the trial court overruled the preliminary objections. The pleadings were closed on February 20, 2015. After discovery was completed, Labor Ready and the Township filed the Motions asserting their immunity under the Act. On January 29, 2016, the trial court granted the Motions and dismissed the Complaint. Nagle appealed to this Court.[7]

Initially,

> [s]ummary judgment is properly granted 'whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]' Pa.R.C[].P. No. 1035.2(1). Summary judgment may be granted only in those cases where the right is clear and free from doubt. The moving party has the burden of proving that there is no genuine issue of material fact. Furthermore, the record and any inferences therefrom must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Laich v. Bracey*, 776 A.2d 1022, 1024 (Pa. Cmwlth. 2001) (citations omitted).

---

[5] In a January 8, 2013 letter to Nagle's counsel, Labor Ready's counsel asserted Labor Ready's subrogation rights. *See* R.R. at 543a.

[6] The Township preliminarily objected to Nagle's Complaint on the basis of improper venue. The Dauphin County Common Pleas Court overruled the objection, and the matter was appealed to this Court (Pa. Cmwlth. No. 1369 C.D. 2013, filed April 2, 2014) (J. Pellegrini, single judge op.). By April 2, 2014 opinion, then-President Judge Pellegrini vacated the Dauphin County Common Pleas Court's decision and remanded the matter for transfer to the trial court.

[7] "Our scope of review of an order granting . . . summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion." *Azar v. Ferrari*, 898 A.2d 55, 59 n.2 (Pa. Cmwlth. 2006).

Labor Ready claims that because Labor Ready employed Bell at the time he was injured, and paid Bell's resulting workers' compensation benefits, Bell "'surrender[ed]' [] any other form or amount of compensation or damage" and, thus, Labor Ready is immune from Nagle's actions under Section 303(a) of the Act. Labor Ready Br. at 6. Labor Ready also contends that since Nagle explicitly agreed during the workers' compensation proceedings that Labor Ready was Bell's employer, judicial estoppel prohibits Nagle from now seeking tort remedies from Labor Ready.

The Township asserts that since it "controlled [Bell's] work and the manner in which he performed [it]," Township Br. at 9, the Township is immune from Nagle's lawsuit under Section 303(a) of the Act. The Township further argues that since Nagle maintains on appeal that the trial court only erred by dismissing Labor Ready, Nagle concedes that the Township was Bell's employer on October 18, 2010 and, thus, is immune from Nagle's action.

## Genuine Issue of Material Fact

The facts of this case are undisputed.[8] On December 21, 2009, Bell signed an employment application with Labor Ready, wherein he acknowledged, among other things, that Labor Ready was his employer and, if he was ever injured while in the course of his work for a Labor Ready customer, he "will look only to *Labor Ready's* Workers' Compensation coverage and not to *Labor Ready's* customer for any recovery." R.R. at 215a. Bell also agreed and consented: "While working at

---

[8] In Nagle's brief, he highlights the trial court's statement that "there may be factual issues[] as to the ultimate right of control and[,] therefore, technical employment status . . . ." Nagle Br. at 12. Notwithstanding, the trial court concluded "there are no meaningful issues in the way of a final disposition of this action." Trial Ct. Op. at 3. Further, Nagle does not cite to any disputed facts. This Court has held: "'[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Fritz v. Glen Mills Sch.*, 894 A.2d 172, 177 (Pa. Cmwlth. 2006) (quoting *Babcock v. Dep't of Transp.*, 626 A.2d 672, 675 (Pa. Cmwlth. 1993)).

the customer's job site, . . . the customer is [his] special employer and . . . directs, controls and supervises [his] work." R.R. at 215a. Labor Ready paid Bell as a day laborer, and provided him general safety training (*see* R.R. at 219a-221a, 224a, 228a-231a, 387a), work gloves and workers' compensation coverage. Labor Ready had the authority to assign Bell to any job, to remove him from that job or fire him from Labor Ready's employ.

The Township has an agreement with Labor Ready under which Labor Ready is to furnish temporary day laborers to the Township on an as-needed basis. The Confirmation of Rates and Services agreement between Labor Ready and the Township specified that Labor Ready's bill rates included "all wages, withholdings, FICA, Medicare, payroll taxes, unemployment insurance and workers' compensation insurance . . . for supplied employees." R.R. at 919a. The Township was required to "[p]rovide adequate supervision and accurately record work hours . . . ." R.R. at 919a. In the agreement, Labor Ready further specified that "[s]ince our workers will be under [the Township's] supervision, . . . [the Township is] required to . . . provide any necessary site-specific safety training . . . ." R.R. at 919a.

In addition, the Township agreed to Labor Ready's Conditions of Service that "Labor Ready workers are under Customer's [the Township's] supervision, direction, and control." R.R. at 921a. Labor Ready's Temporary Worker Safety Training Manual (Manual) also stated: "Labor Ready does not provide work site supervision, as you will be under the sole direction and control of the customer." R.R. at 924a. Moreover, the Manual detailed:

> Labor Ready requires from its customers that each work site be supervised by a 'competent' person. This is someone who:
>
> Has knowledge and experience in the job.
>
> Has the knowledge of the work site hazards.

5

Has knowledge of safety regulations related to the job site.

Has authority to correct hazards.

R.R. at 924a. Accordingly, Labor Ready expected the Township to instruct Bell and supervise him in his job while he worked for the Township.[9] *See* R.R. at 906a.

On October 18, 2010, in response to the Township's request for a laborer, Labor Ready selected Bell and instructed Bell to report to work for the Township. Labor Ready supplied Bell with gloves for the Township assignment. *See* R.R. at 377a. The Township assigned Bell to work on its trash truck, and told Bell how to perform the assigned job. Bell sustained his fatal injuries when he fell from the moving trash truck. Labor Ready paid Bell's workers' compensation benefits without the Township's involvement. Clearly, there are no genuine issues of material fact that would preclude summary judgment in this matter. Rather, the parties dispute the legal consequences of the undisputed facts.

## Judgment as a Matter of Law

> In order to promote certainty in the legal affairs of Pennsylvania's industrial base, while protecting employees and their families from economic devastation arising from work-related injuries, our legislature formulated [the Act] . . . to assure quick, fair, and certain compensation for employment-related injuries without requiring the complainants to resort to the courts for recovery.

*Alston v. St. Paul Ins. Cos.*, 567 A.2d 663, 665-66 (Pa. Super. 1989), *aff'd,* 612 A.2d 421 (Pa. 1992); *see also Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2013). To that end, Section 301(a) of the Act requires that "[e]very employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in

---

[9] In its March 2012 answers to interrogatories, Labor Ready specified that it was Bell's "[g]eneral employer," and the Township was Bell's "[s]pecial employer." R.R. at 535a.

the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence[.]" 77 P.S. § 431.

However, "[i]n exchange for greatly eased burdens of proof and the abolition of various common-law affirmative defenses, the Act . . . deprives workers of some rights in return for greater certainty in the receipt of benefits." *Danese v. Morrison-Knudsen/Slattery*, 784 F. Supp. 228, 229 (E.D. Pa.), *aff'd,* 975 F.2d 1549 (3d Cir. 1992); *see also Kuney v. PMA Ins. Co.,* 578 A.2d 1285 (Pa. 1990). Specifically, in Section 303(a) of the Act, the General Assembly declared:

> The **liability of an employer under this** [**A**]**ct shall be exclusive and in place of any and all other liability** to such employes, [] legal representative[s, or] . . . next of kin . . . entitled to damages in any action at law or otherwise **on account of any injury or death as defined in** [**S**]**ection 301(c)(1) and (2)** [**of the Act**, 77 P.S. § 411(1), (2).]

77 P.S. § 481(a) (emphasis added). The Pennsylvania Supreme Court has stated: "Worker[s'] [c]ompensation can best be understood as **a replacement of common law tort actions between employees and employers as a means for obtaining compensation for injuries**." *Markle v. Workmen's Comp. Appeal Bd. (Caterpillar Tractor Co.)*, 661 A.2d 1355, 1357 (Pa. 1995) (emphasis added).

"Employment status is a critical threshold determination for [workers' compensation] liability. A claimant must prove an employment relationship in order to receive benefits." *Am. Rd. Lines v. Workers' Comp. Appeal Bd. (Royal)*, 39 A.3d 603, 610 (Pa. Cmwlth. 2012) (citation omitted). This Court has held:

> The existence of an employer-employee relationship is a question of law based upon the facts of each case. *Red Line Express Co. v. Workmen's Comp. Appeal Bd. (Price),* . . . 588 A.2d 90, 93 ([Pa. Cmwlth.] 1991). Under the Act, the terms 'employer' and 'employee' are synonymous with master and servant, respectively. Sections 103 and 104 of the Act, 77 P.S. §§ 21-22. **The 'borrowed servant' doctrine stands for the proposition that '[o]ne who is in**

7

**the general employ of one employer may be transferred to the service of another in such a manner that the employee becomes an employee of the second employer**.' [*Red Line Express*, 588 A.2d at 93] (citing *Mature v. Angelo, . . .* 97 A.2d 59 ([Pa.] 1953)). In *JFC Temps, Inc. v. Workmen's Compensation Appeal Board (Lindsay), . . .* 680 A.2d 862, 864 ([Pa.] 1996) (citing *Mature*), our Supreme Court explained:

> **The test** for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned **is** *whether he passes under the latter's right to control with regard not only to the work to be done but also the manner of performing it*. **The entity possessing the right to control the manner of the performance of the servant's work is the employer**, irrespective of whether the control is actually exercised.

([Italic e]mphasis added).

Although the right to control the performance of the work is the most persuasive indication of the existence of an employer-employee relationship, other factors may be relevant. [*JFC Temps*], 680 A.2d at 865. In *Mature, . . .* our Supreme Court stated:

> Facts which indicate that the servant remains the employe of his original master are, among others, that the latter has the right to select the employe to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a rate by the day or hour, and that the employment is for no definite period.

[*Id.* at 61.] The payment of wages, withholding of payroll deductions, and provision of workers' compensation coverage, may also be considered, but are not determinative factors. *See Supp v. Erie Ins. Exch., . . .* 479 A.2d 1037, 1041 ([Pa. Super.] 1984).

*Canot v. City of Easton*, 37 A.3d 53, 61 (Pa. Cmwlth. 2012) (bold emphasis added). "The parties are not bound by their characterization of the relationship." *Virtue v. Square D Co.*, 887 F.Supp. 98, 102 (M.D. Pa. 1995); *see also Keller v. Old Lycoming Twp.*, 428 A.2d 1368, 1365 (Pa. Super. 1981) ("the meaning of 'employer' under the Act is controlled by the legal interpretation of the Act as reflected in our past cases, . . . and not by the definitions that others care to give to that term.").

Moreover,

[u]nder the [Act], the fact that the 'lending employer' pays for [workers' c]ompensation insurance is no impediment to finding the 'borrowing employer' to be immune from suit pursuant to [Section] 303 [of the Act]. **The means used to fulfill the statutory obligation to provide [workers' c]ompensation coverage do not affect the immunity conferred by [Section] 303 [of the Act]. Consequently, despite the nature of the claim being asserted and despite the indirect method by which [workers' c]ompensation was provided, the bar of [Section] 303 [of the Act] is not avoided**.

*Supp*, 479 A.2d at 1041 (citations omitted; emphasis added). Further, "entities who borrow laborers from temporary employment agencies can be statutory employers, and thus immune from suit under [S]ection [303] of the Act, even if they exercise control for only a short time." *Virtue*, 887 F.Supp. at 102.

Based upon the record in this case, the trial court granted summary judgment in favor of both Labor Ready <u>and</u> the Township stating, in pertinent part:

At the [o]ral [a]rgument on the [Motions], counsel for [Nagle] made it clear to the [trial c]ourt that he believed [the] Township qualified as the legal employer of [] Bell, by virtue of the fact of many elements of control over the physical actions of [] Bell, sufficient for a traditional finding of employer/employee status.

[Nagle] suggests that the issue of control determines whether or not, in this case, [the] Township can enjoy

9

immunity from a [n]egligence [a]ction under the [Act]. Counsel for [Nagle] suggests that is the case.

On the other hand, [Nagle] seeks damages for traditional negligence against Labor Ready [], on the theory that the only immunity available on this case, under the [Act], is that afforded [the] Township for the reasons stated.

Labor Ready suggests that it should be able to enjoy immunity[] under the [Act], because it was in fact the employer, that [Bell] elected Labor Ready as the [workers' c]ompensation carrier, that it paid benefits and that those benefits were in fact accepted by [Bell] and/or his [e]state.

Under the circumstances, **although [the] Township, undoubtedly, had a right to control, we are not convinced that this element or conclusion prevents the bar of immunity to be asserted by Labor Ready**.

On equitable principles, whether or not estoppel is technically available, it would seem that, under the circumstances, to permit [Bell's] [e]state to sue an employer[] who fully paid under the [Act] pursuant to an agreement to that effect with the employer[,] and for other reasons[,] would be inappropriate.

As we stated, [Nagle] argues that the bar to suit only applies to the entity with control and [Nagle] suggests that [the] Township is that entity and [is] therefore entitled to immunity. [Nagle] further suggests the fact of payment is irrelevant. We do not think it is under the circumstances.

R.R. at 949a-950a (emphasis added).

Nagle argues that the trial court erred by granting summary judgment in Labor Ready's favor based upon findings that equitable principles preclude Nagle from filing a lawsuit against Labor Ready. Nagle specifically asserts that "[n]either the doctrine of judicial estoppel nor any other equitable theory would preclude Nagle from pursuing an action based on negligence against Labor Ready, especially where Labor Ready was not [] Bell's employer under the Act at the time of the accident." Nagle Br. at 11. We disagree.

10

As to the doctrine of judicial estoppel, this Court recognizes:

> [a]s a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. Accordingly, judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; and (2) that the appellant's contention was 'successfully maintained' in that action.[10]

> *Canot . . . ,* 37 A.3d [at] 60 . . . (quoting *Black v. Labor Ready, Inc.,* 995 A.2d 875, 878 (Pa. Super. 2010)).

*Marazas v. Workers' Comp. Appeal Bd. (Vitas Healthcare Corp.)*, 97 A.3d 854, 859 (Pa. Cmwlth. 2014). "**The purpose of judicial estoppel is to ensure the parties do not play 'fast and loose' with the facts in order to suit their interests in different actions before different tribunals.**" *Id.* "**To estop later inconsistent statements, the original statements must be verified or sworn**." *Id.* at 860.

Labor Ready was, indeed, the defendant/employer that provided Bell's workers' compensation benefits, and against whom Nagle filed the workers' compensation penalty petition on February 14, 2011. *See* R.R. at 545a, 547a, 549a, 552a-553a. Nagle's counsel Derek Cordier, Esquire filed the penalty petition on Nagle's behalf, listing Labor Ready under "Employer Name." *See* Certified Record (C.R.) Item 5 at LR0092; *see also* R.R. at 552a. Nagle's counsel further alleged that

---

[10] In *Black v. Labor Ready, Inc.*, 995 A.2d 875 (Pa. Super. 2010), the Pennsylvania Superior Court observed: "Our Supreme Court has not definitively established whether the second element (successful maintenance) is strictly necessary to implicate judicial estoppel or is merely a factor favoring the application. *See* [*In re Adoption of*] *S.A.J.*, [838 A.2d 616 (Pa. 2003)]." *Black*, 995 A.2d at 878 n.8; *see also Westfield Ins. Co. v. Astra Foods, Inc.*, 134 A.3d 1045 (Pa. Super. 2016). Notwithstanding, the Pennsylvania Supreme Court in *S.A.J.* held that "successfully maintained" does not require an adjudication, but includes situations in which "the individual who made inconsistent statements successfully established [his] claim and reaped its reward (i.e., payment of benefits)." *S.A.J.*, 838 A.2d at 622.

"[Labor Ready] has violated the terms of the [Act] and/or Regulations . . . ," and demanded Labor Ready to pay penalties as a result. C.R. Item 5 at LR0093. The workers' compensation judge adopted the parties' stipulation, which reflects that "Defendant" Labor Ready timely answered Nagle's penalty petition and, ultimately, Nagle and Labor Ready agreed that "Defendant/Employer" Labor Ready's lump sum payment resolved the penalty petition. R.R. at 552a; *see also* R.R. at 551a, 553a.

As discussed above, the law is well-established that the threshold requirement for the imposition of workers' compensation liability is the existence of an employer-employee relationship. By filing the penalty petition and executing the March 22, 2011 stipulation resolving Labor Ready's workers' compensation payments and accepting payment, Nagle verified/swore/stipulated and successfully maintained that Labor Ready was Bell's employer. *See* R.R. at 553a. Nagle did not take a contrary position until he filed the instant Complaint. Thus, we hold that Nagle is judicially estopped from now claiming that Labor Ready was not Bell's employer. Accordingly, the trial court did not err by granting summary judgment in Labor Ready's favor based upon finding that equitable principles precluded Nagle from filing a lawsuit against Labor Ready.

Nagle also contends that the trial court erred by granting summary judgment in Labor Ready's and the Township's favor based upon a finding that both were employers entitled to immunity under Section 303(a) of the Act. Specifically, Nagle contends that, in the temporary worker context, only the employer with the right to control the temporary employee's performance is entitled to immunity under the Act. We disagree.

Pennsylvania courts have long held that the overriding factor indicative of an employer-employee relationship is the employer's right to control the work to be done and the manner of performing it. *See Puhlman v. Excelsior Express & Standard Cab Co.*, 103 A. 218 (Pa. 1918); *see also JFC Temps*; *Mature*; *Venezia v.*

12

*Phila. Elec. Co.*, 177 A. 25 (Pa. 1935); *Canot*; *City of Monessen v. Workmen's Comp. Appeal Bd. (Galanoudis)*, 387 A.2d 1000 (Pa. Cmwlth. 1978); *Black*; *Wilkinson v. K-Mart*, 603 A.2d 659 (Pa. Super. 1992); *Keller*; *English v. Lehigh Cnty. Auth.*, 428 A.2d 1343 (Pa. Super. 1981); *Claudio v. MGS Mach. Corp.*, 798 F. Supp. 2d 575 (E.D. Pa. 2011). However, these decisions also recognize that the existence of other factors may indicate an employer-employee relationship.

Here, the undisputed facts establish that Labor Ready hired Bell and had the authority to fire him, Bell reported to Labor Ready for his daily assignments, Labor Ready provided him with general safety training and gloves for jobs, Labor Ready paid Bell's wages and workers' compensation benefits, and Bell expressly acknowledged that Labor Ready was his employer relative to work injuries. However, at the time Bell's injury occurred on October 18, 2010, the Township had the right, and indeed was required, to direct, control and supervise Bell's work. The record is clear that the Township did just that. Because the established law holds that the entity with the right to control Bell's work and his manner of performing it is the leading indicator of his employer, the Township was clearly Bell's borrowing employer at the time of his work injury. Thus, the Township is entitled to immunity under Section 303(a) of the Act. Accordingly, the trial court properly entered judgment in the Township's favor.[11]

Notwithstanding, the above-cited case law does not answer the specific question before us – whether **both** Labor Ready and the Township, who undisputedly evidenced indicia of the employer-employee relationship with Bell, are immune from

---

[11] In light of our holding, we need not address the Township's claim that it is immune under what is commonly referred to as the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541-8542.

13

tort liability under Section 303(a) of the Act for damages arising from and relating to Bell's work-related injury. Section 303(a) of the Act provides:

> **The liability of an employer under this** [**A**]**ct shall be** exclusive and **in place of any and all other liability to such employes**, [] legal representative[s, or] . . . next of kin . . . **entitled to damages in any action at law or otherwise** on account of any injury or death as defined in [S]ection 301(c)(1) and (2) [of the Act, 77 P.S. § 411(1), (2)] . . . .

77 P.S. § 481(a) (emphasis added). Our Supreme Court has declared that "[S]ection 303(a) [of the Act] is essentially self[-]explanatory." *Lewis v. Sch. Dist. of Phila.*, 538 A.2d 862, 867 (Pa. 1988). The purpose of the Act's exclusivity provision is

> '**to restrict the remedy** available to an employee **against the employer to compensation**, and to close to the employee, and to third parties, any recourse against the employer in tort for negligence.' *Tsarnas v. Jones & Laughlin Steel Corp*[.], . . . 412 A.2d 1094, 1097 ([Pa.] 1980). . . . We hold, therefore, that **the** [**Act's exclusivity provision**] **deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers** . . . .

*LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986) (emphasis added).

> Th[e Pennsylvania Supreme] Court has recognized that **the Act 'substitutes** a quick and inexpensive scheme to provide compensation for work-related injuries **in place of the common law process** where the employee must sue the appropriate parties for damages. Employers pay benefits at a set rate and they are immune from common-law liability.' *Sporio* [*v. Workmen's Comp. Appeal Bd. (Songer Constr.)*], . . . 717 A.2d [525,] 530 [Pa. 1998)] (citation omitted); *see also Markle v.* [*Workmen's Comp. Appeal Bd.*] *(Caterpillar Tractor Co.),* . . . 661 A.2d 1355, 1357 ([Pa.] 1995) ('[w]orker's [c]ompensation can best be understood **as a replacement of common law tort actions** between employees and employers as a means for obtaining compensation for injuries.').

*Tooey*, 81 A.3d at 860 (emphasis added).  Thus, with certain limited exceptions not applicable here,[12] "[t]he exclusivity provision of the Act **essentially 'bars tort actions flowing from _any_ work-related injury**.'"  *Am. Rd. Lines*, 39 A.3d at 610 (quoting *Kline v. Arden H. Verner Co.*, 469 A.2d 158, 160 (Pa. 1983)) (bold and underline emphasis added); *see also Poyser v. Newman & Co.*, 522 A.2d 548 (Pa. 1987); *Lozado v. Workers' Comp. Appeal Bd. (Dependable Concrete Work & Uninsured Emps. Guar. Fund)*, 123 A.3d 365, 371 (Pa. Cmwlth. 2015) ("Since the Act was amended in 1974, it has served as **a complete substitute for common law tort actions**" against employers for work injuries.  (Emphasis added.)); *Minto v. J.B. Hunt Transp., Inc.*, 971 A.2d 1280 (Pa. Super. 2009).   Accordingly, Nagle's exclusive remedy for injuries and damages arising from Bell's October 18, 2010 work accident is the workers' compensation benefits Labor Ready has already paid.

Moreover, as is evident from the leading borrowed employee cases cited above, neither the courts nor the Workers' Compensation Appeal Board have declared that only a single employer may be shielded from tort liability under the Act's exclusivity provision, and Section 303(a) of the Act does not require such a result.  Rather, the General Assembly and our Supreme Court have made clear that

---

[12] For example, the Act's exclusivity provision does not apply where the court determines that the injury did not arise in the course of employment. *See Minto v. J.B. Hunt Transp., Inc.*, 971 A.2d 1280 (Pa. Super. 2009).  The Act does not preclude employee actions based on an employer's negligence, if the negligence is associated with injuries inflicted by a co-worker for personal reasons. *See Krasevic v. Goodwill Indus. of Cent. Pa., Inc.,* 764 A.2d 561 (Pa. Super. 2000); *see also* 77 P.S. § 411(1).  Employee can bring common law actions against employers who make fraudulent misrepresentations that lead to a delay which aggravates a work-related injury. *See Martin v. Lancaster Battery Co., Inc.*, 606 A.2d 444 (Pa. 1992) (relating to employer's withholding of lead blood test results); *see also Kostryckyj v. Pentron Lab. Techs., LLC*, 52 A.3d 333 (Pa. Super. 2012) (relating to employer's failure to warn of, and employee's continued exposure to, toxic chemicals).  In addition, under Section 305(d) of the Act, 77 P.S. § 501(d), "an employee is given the option to sue an employer in tort or pursue a workers' compensation remedy if the employer is uninsured or is not an approved self-insurer." *Campagna v. Brandon Knitwear, Inc.*, 797 A.2d 405, 406 n.1 (Pa. Cmwlth. 2002).

the General Assembly's pronounced policy is that workers' compensation is the injured worker's **sole remedy** against *any* employer for all work-related injuries.

This Court has concluded that all of a borrowed servant's employers are entitled to immunity under Section 303(a) of the Act. *Temple v. Milmont Fire Co.*, 525 A.2d 848 (Pa. Cmwlth. 1987). *Standard Pennsylvania Practice* 2d states, without limitation:

> **An employee may have more than one employer, both of whom are entitled to the immunity granted by the [Act].**[1]
>
> []**Observation:** The liability or responsibility to pay workers' compensation benefits is not a prerequisite to being considered an employer under the [Act]. As long as the injured worker is provided with compensation benefits by some employer, **all such employers under the Act are entitled to immunity under the Act**.[2]
>
> > [1] *Capozzoli v. Stone & Webster Eng['g] Corp.*, . . . 42 A.2d 524 ([Pa.] 1945); *Merryman v. Farmington Volunteer Fire Dep[']t*, . . . 572 A.2d 46 ([Pa. Cmwlth.] 1990); *Temple* . . . .
> >
> > [2] *Temple* . . . .

39 *Standard Pa. Practice* 2d § 167:421 (bold and underline text emphasis added).

In *Temple*, Richard Temple (Temple), a volunteer fire company member, was injured during a local school demonstration conducted as part of the township-authorized fire prevention week event. The township furnished Temple workers' compensation disability benefits pursuant to the Act. Thereafter, Temple filed a negligence action against the fire company and the township, both of which moved for summary judgment on grounds that they were immune under Section 303 of the Act. The trial court granted both summary judgment motions. Temple appealed, claiming that he was not the township's employee. This Court held in *Temple*:

**[T]he Township's payment of workmen's compensation benefits** under Section 301(a) of the Act **. . . and [Temple's] acceptance of the same, barred him from suing the Township since his sole remedy was within the provisions of the Act.** The grant of summary judgment in favor of the Township on the basis of Section 303 of the Act . . . must be affirmed.

The issue of whether summary judgment was properly granted to the Fire Company is more complex. With respect to the Fire Company's immunity under the Act, that immunity will only be applicable if the Fire Company can be deemed to have been [Temple's] employer at the time in question. Whether an injured employe may have more than one employer under the Act is raised here as an issue. Our reading of the Act, and research into the interpretative case law, convinces us that **an employe may have more than one 'employer' for purposes of the Act**.

We initially note that under the Act, **the General Assembly has provided for multiple liability** to provide workm[e]n's compensation benefits in certain circumstances. For example, in the subcontractor/contractor situation, Sections 302(a) and 302(b) of the Act, 77 P.S. §§ 461[,] 462, provide that the prime contractor is the statutory employer of the employees of its subcontractors and is liable for the payment of workmen's compensation benefits to the subcontractors' injured employees unless the prime contractor required its subcontractors to secure the payment of such benefits. Thus, while the injured employe is the actual employe of the subcontractor, that same employe is also the statutory employe of the prime contractor as well for workmen's compensation purposes. In *Capozzoli* . . . , the Pennsylvania Supreme Court held that both the actual *and* statutory employer of a deceased employe were entitled to the immunity granted by the Act. The significant portion of the *Capozzoli* decision was the Supreme Court's holding that **the statutory employer was still entitled to the immunity granted by the Act despite the fact it had relieved itself of the liability to pay workmen's compensation benefits** by requiring the subcontractor to secure the payment of such benefits through the purchase of insurance. Under *Capozzoli,* the liability or responsibility to pay workmen's compensation benefits is not a prerequisite to being considered an 'employer' under the

Act and that decision can be read to hold that **so long as the injured worker is provided with workmen's compensation benefits by** *some* **employer,** <u>all</u> **such employers under the Act are entitled to the grant of immunity in Section 303 of the Act.** . . . Thus, we conclude, as did the common pleas court, that the federal district court misconstrued the Act and interpretative case law in *Guffey v. Logan,* 563 F. Supp. 951 (E.D. Pa. 1983), when it held that an injured worker could have only one 'employer' entitled to immunity under the Act.

*Temple*, 525 A.2d at 849-50 (citations omitted; bold and underline emphasis added).

Nagle claims that *Temple's* holding "is narrowly limited to situations involving volunteer fire and rescue companies, where unique public policy concerns support the finding that under these specific circumstances an employee could have more than one employer." Nagle Br. at 19. However, Nagle misconstrues the Court's holding.

In reaching its decision in *Temple*, this Court relied upon the Pennsylvania Supreme Court's reasoning in *Capozzoli*, which was not a volunteer fire company case. Thereafter, in *Merryman*, this Court again declared:

In *Temple,* . . . this Court . . . held that an injured employee may have more than one employer under the Act. The Court further held that as long as the injured worker is provided with workmen's compensation benefits by *some* employer all such employers under the Act are entitled to the grant of immunity in Section 303 of the Act, 77 P.S. § 481. This Court specifically refused the interpretative case law in *Guffey* . . . , which held that an injured worker could have only one 'employer' entitled to immunity under the Act. We note that the *Guffey* case, much relied upon by the appellant, was decided before *Temple,* **which latter case, it is believed, was the first Pennsylvania state appellate case which decided this issue**. We note further the case of *Capozzoli* . . . , where the Pennsylvania Supreme Court, in an analogous situation, held that **both the actual** *and* **statutory employers of a deceased employee were entitled to the immunity granted by the Act**.

18

*Merryman*, 572 A.2d at 48 (emphasis added).

Although **this Court in *Temple* and *Merryman*** took into account the unique situations posed by volunteer fire companies based upon the fact that their workers' compensation coverage requirements differ from other employers,[13] those courts **did not expressly limit their holdings to volunteer fire company cases**. Because the *Merryman* Court upheld *Temple* without limitation, the *Temple* Court's conclusion that an employee may have more than one employer under the Act, and that all such employers are entitled to immunity under Section 303(a) of the Act, remains the law.

Several years after *Temple* was decided, the Pennsylvania Superior Court, in *Pastore v. Anjo Construction Co.*, 578 A.2d 21 (Pa. Super. 1990), a non-volunteer fire company case, relied upon *Temple's* conclusion that "[an e]mployee may have more than one employer under the [Act, and] all such employers under the Act are entitled to immunity in Section 303 [of the Act] . . . ." *Pastore*, 578 A.2d at 25. Thereafter, the U.S. District Court for the Eastern District of Pennsylvania, in another non-volunteer fire company case, held:

> We do not interpret ***Temple*** and ***Merryman*** to hold that there may be two *actual* employers under the Act, however, merely that where **the Act confers employer status on one who is not the actual employer (with the right to control the manner of performance of work) the court can also recognize and find immune the injured employee's** *actual* **employer**.

---

[13] *See* Section 601(a)(1) of the Act, 77 P.S. § 1031(a)(1), added by Section 15 of the Act of December 5, 1974, P.L. 782 (specifically relating to coverage for volunteer fire companies).

*Sklodowski v. Isaac Watkin Co.* (E.D. Pa. No. 90-3637, filed December 18, 1991), slip op. at 4 (bold emphasis added).[14, 15]

---

[14] Twenty years after *Sklodowski*, the *Claudio* Court stated that, although the Commonwealth Court in *Temple* and *Merryman*, the Superior Court in *Pastore* and the federal court in *Sklodowski* declared that an employee can have more than one employer under the Act's exclusivity provision, in *Keller*, *Wilkinson* and *English*, the Superior Court "implied that either the lending employer or the borrowing employer is the employer for purposes of [Act] immunity, not both." *Claudio,* 798 F. Supp. 2d at 583 n.12. However, the *Claudio* Court failed to recognize that, due to their specific procedural postures, the Superior Court was not presented in *Keller* (which was decided before *Temple*) and *Wilkinson* (decided five years after *Temple*) with the question of whether a lending and a borrowing employer could simultaneously be immune under Section 303(a) of the Act. In *English*, since lending employer Kelly Labor's motion for summary judgment based upon immunity was denied on appeal, Kelly Labor remained a party to English's civil action. We do not know if the trial court in *English* ultimately declared Kelly Labor immune under the Act.

[15] "Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value." *GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 n.15 (Pa. Cmwlth. 2016). Unreported federal court decisions may also have persuasive value. We cite *Sklodowski* solely for its persuasive value.

Similar legal rulings have been reached by other jurisdictions (in non-volunteer firefighter cases) where the courts have held that their workers' compensation exclusivity provisions preclude a claimant from accepting workers' compensation from a temporary agency and then seeking civil damages from the borrowing employer. Specifically, the Texas Supreme Court has declared:

> The fact that [the temporary agency's client] actually controlled the details of [the employee's] work at the time she was injured, and thus was also an employer within the meaning of the Act, **does not preclude the applicability of the Act's provisions, including the exclusive remedy provision, to** <u>both</u> [**the temporary agency**] **and** [**the temporary agency's client**].

*Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 149 (Tex. 2003) (emphasis added); *see also Garza v. Excel Logistics, Inc.*, 161 S.W.3d 473 (Tex. 2005). The New Jersey Supreme Court affirmed the New Jersey Superior Court's holding on this issue:

> New Jersey 'allows an employee, for the purpose of workers' compensation to have two employers, both of whom may be liable in [workers'] compensation.' *Antheunisse* [*v. Tiffany & Co., Inc.*, 551 A.2d 1006, 1007 (N.J. Super. 1988)]. In such circumstances, **the right to recover workers' compensation benefits serves to bar the employee from maintaining a tort action against either employer**. [*Id.*]

*Kelly v. Geriatric & Med. Servs., Inc.*, 671 A.2d 631, 634 (N.J. Super.) (emphasis added), *aff'd*, 685 A.2d 943 (N.J. 1996).

In addition,

> [i]t is well settled that '[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.' [Section 1921(a) of the Statutory Construction Act of 1972 (SCA),] 1 Pa.C.S.[] § 1921(a). Further, '[i]n giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Giant Eagle, Inc. v. W[orkers' Comp. Appeal Bd.] (Givner), . . .* 39 A.3d 287, 290 (Pa. 2012) (citation omitted). When construing statutory language, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage.' [Section 1903 of the SCA,] 1 Pa.C.S.[] § 1903.

*Tooey*, 81 A.3d at 858. Section 1922 of the SCA specifies that, in ascertaining the General Assembly's intention, there is a presumption that it did not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922.

First, the General Assembly did not specify in Section 303(a) of the Act, as it could have, that only a single employer is immune from civil liability thereunder. Rather, Section 303(a) of the Act does not refer to the liability of *the* employer, but "*an*" employer. Section 102 of the Act expressly states: "Wherever in this [A]ct the singular is used, the plural shall be included[.]" 77 P.S. § 2. Moreover,

> Section 1902 of the [SCA] advises us that when considering the intent of a statute's wording, we must be aware that '[t]he singular shall include the plural, . . . ." 1 Pa.C.S. § 1902. Thus, . . . [S]ection [303(a) of the Act] herein can appropriately be read as[, '[t]he liability of [employers] under this [A]ct shall be exclusive and in place of any and all other liability to such employes . . . .' 77 P.S. § 481(a)]. The foregoing analysis would . . . permit [the exclusivity provision's application to more than one employer].

*Summit House Condo. v. Commonwealth*, 523 A.2d 333, 335 (Pa. 1987).

Second, we acknowledge that the Act is remedial in nature and must be liberally construed in the injured worker's favor. *Giant Eagle, Inc.* However, "**[t]he Act** . . . **does not authorize windfalls**. . . . [T]he extent of an employer's liability may and should vary depending on the particular circumstances affecting the claimant." *Griffiths v. Workers' Comp. Appeal Bd. (Seven Stars Farm, Inc.)*, 943 A.2d 242, 257 (Pa. 2008) (emphasis added).

Considering the Act's overall purpose of providing workers expeditious coverage for their medical expenses and financial stability during their work-related disability in exchange for not suing their employer in court, affording the Township immunity from civil liability for Bell's work injury but authorizing Nagle to seek tort damages from Labor Ready (which, the parties agree, has fully compensated Bell as required) would lead to an absurd and unreasonable result, and render Section 303(a) of the Act utterly meaningless. A reasonable interpretation, consistent with the General Assembly's intent and *stare decisis*, is that both Labor Ready and the Township are immune from Nagle's actions. We adopt the Vermont Supreme Court's well-articulated and reasoned explanation:

> The exclusive remedy of workers' compensation payments is part of the quid pro quo in which the sacrifices and gains of employers and employees are balanced. 2A A. Larson, Workmen's Compensation Law § 65.11, at 12-1, 12-12 (1996). An injured employee is provided 'expeditious and certain payments' without having to prove fault. *St. Paul Fire & Marine Ins. Co. v. Surdam,* . . . 595 A.2d 264, 266 ([Vt.] 1991). In return, the worker gives up the right to sue the employer. **Allowing an employee with more than one employer to collect workers' compensation benefits from the first employer and then turn around and sue the second in negligence frustrates this policy**. [The employee] seeks to live in the best of both worlds: having collected benefits for her injuries from [the temporary agency] without having to show employer fault, she now seeks the right to pursue a separate, potentially larger jury award from her second employer. If allowed, employers . .

22

. would be subject to double liability—ultimate responsibility for paying benefits under the Act . . . , while remaining exposed to the threat of common-law negligence suits. . . . . **We will not interpret the statute in a manner that undermines the balance between expeditious, automatic payments to employees in return for limited liability for employers**.

*Candido v. Polymers, Inc.*, 687 A.2d 476, 478-79 (Vt. 1996) (emphasis added); *see also Welch v. Home Two, Inc.*, 783 A.2d 419 (Vt. 2000).

Applying *Temple* to this case, we hold that Labor Ready, like the Township, is immune from Nagle's civil claims under Section 303(a) of the Act. Because the trial court did not err by granting summary judgment in Labor Ready's and the Township's favor based upon a finding that both were employers entitled to immunity under Section 303(a) of the Act, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

23

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Lynn Nagle,                 :
Executor of the Estate of        :
Douglas Edward Bell, Deceased,   :
                  Appellant    :
                          :
           v.             :
                          :
TrueBlue, Inc., Labor Ready, Inc.   :
and Labor Ready Northeast, Inc.   :   No. 247 C.D. 2016
and Rye Township             :

## O R D E R

AND NOW, this 24th day of October, 2016, the January 29, 2016 order of the Court of Common Pleas of the 41st Judicial District (Perry County Branch) is affirmed.

_____
ANNE E. COVEY, Judge